UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

FERNANDO GONZALEZ GONZALEZ,                                          Petitioner,

v.                                                      Civil Action No. 4:26-cv-313-RGJ

MIKE LEWIS, et al.,

                                                                   Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Fernando Gonzalez Gonzalez's Writ of Habeas Corpus. [DE 1]. Respondents responded on May 7, 2026. [DE 6]. Petitioner replied on May 8, 2026. [DE 8]. The parties agree no evidentiary hearing is necessary. [DE 5; DE 7]. This matter is ripe for adjudication. For the reasons below, this Court **GRANTS** the Petition for Writ of Habeas Corpus. [DE 1].

**I.      Background**

Petitioner Fernando Gonzalez Gonzalez ("Gonzalez") is a 34-year-old native and citizen of Mexico. [DE 1 at 11]. Gonzalez has been present in the United States since August 2008. [*Id.*]. Gonzalez entered the United States without inspection. [*Id.*].[1] Gonzalez has resided in Madisonville, Kentucky since his entry into the United States. [*Id.*].

Gonzalez has been in detention since April 27, 2026. [*Id.*]. On April 25, 2026, Gonzalez was arrested by Shelby County Police for operating a moped without a license. [*Id.*]. He was then jailed at the Shelby County Jail. [DE 6 at 29]. On April 26, 2026, Shelby County Police contacted Immigration and Customs Enforcement ("ICE"). [*Id.*]. ICE then lodged an immigration detainer with the Shelby County Jail. [*Id.*]. On April 27, 2026, ICE detained and took custody of Gonzalez,

---

[1] The United States concedes that Gonzalez entered "without inspection." [DE 6 at 29].

served him an I-200 Warrant for Arrest, and transferred him to Hopkins County Jail in the Western District of Kentucky where he has remained since. [*Id.* at 30].

On the same day as his detention, ICE also issued a Notice to Appear Form I-862. [DE 6-3 at 41]. The Notice to Appear marked Gonzalez as an "alien present in the United States who has not been admitted or paroled." [*Id.*]. Gonzalez is currently in full removal proceedings pursuant to 8 U.S.C. § 1229a. [DE 6 at 30].

ICE contends that based on interim guidance from DHS, issued July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," only those noncitizens who have already been admitted into the United States are eligible to be released during removal proceedings and all other noncitizens are subject to mandatory detention, under 8 U.S.C. § 1225 ("Section 1225"), not Section 1226. [DE 1 at 8-9]. This is a reversal of longstanding policy. [*Id.*].

Gonzalez asserts that the United States illegally detained him under Section 1225 instead of Section 1226 in violation of the INA. [*Id.* at 11-13]. And that this prolonged detention is in violation of his Due Process Rights under the Fifth Amendment. [*Id.*]. Therefore, Gonzalez seeks release from his detention, or in the alternative, to hold a bond hearing before a neutral IJ to determine whether he should remain in custody. [*Id.*].

In response, the United States "rel[ies] on and incorporate[s] by reference the legal arguments from the briefs the government filed with the Sixth Circuit Court of Appeals in the four §§ 1225-1226 appeals." [DE 6 at 31-32]. Those cases are *Lopez-Campos v. Raycraft*, Case No. 25-1965 (6th Cir. Oct. 27, 2025); *Alvarez v. Noem,* Case No. 25-1969 (6th Cir. Oct. 27, 2025); *Contreras-Cervantes v. Raycraft*, Case No. 25-1978 (6th Cir. Oct. 28, 2025); *Pizarro Reyes v. Raycraft*, Case No. 25-1982 (6th Cir. Oct. 29, 2025). The United States concedes that the "relevant facts in all four matters on appeal" are "similar to the relevant facts in this matter" and the only

"legal question" is whether the Petitioner is detained under Section 1225(b)(2)(A) or Section 1226. [DE 6 at 31].

## II.    DISCUSSION[2]

### A.  Section 1225(b)(2) vs. Section 1226

While the relevant facts are undisputed by the parties, the United States argues Section 1225 applies to Gonzalez's detention, not Section 1226. The United States acknowledges that the Court has previously ruled on the substantive question regarding § 1225 mandatory detention, [DE 6 at 31-32], and, that the only relevant legal question in this case is whether Gonzalez is "detained under 8 U.S.C. § 1225 or § 1226[.]" [*Id.* at 31]. As such the Court incorporates by reference its reasoning in *Edahi v. Lewis*, 2025 WL 3466682, at \*5-\*13 (W.D. Ky. Nov. 27, 2025) and *Vicen v. Lewis,* 2026 WL 541171, \*2–\*9 (W.D. Ky. Feb. 26, 2026), holding that Section 1226 applies to the Petitioner based on the facts set forth above.

In finding that Section 1226 applies to the Petitioner, this Court is in agreement with the Second Circuit's recent unanimous opinion in *Cunha v. Freden,* --- F.4th --- 2026 WL 1146044 (2d Cir. Apr. 28, 2026), which discusses the identical Section 1225 vs. Section 1226 issue raised here. The Second Circuit held that the

> government's attempt to muddy these textually clear waters defies the statute's context, structure, history, and purpose; contradicts the Supreme Court's dicta in *Jennings* and longstanding Executive Branch practice; and its interpretation of the statute raises serious constitutional questions that should be avoided even if the statutory language were ambiguous.

*Id.* at \*23.

---

[2] Neither party asserted any jurisdiction-related arguments. However, the Court has analyzed jurisdiction of remedies in similar circumstances, such as *Edahi*, 2025 WL 3466682, at \*2-3 and incorporates its reasoning into this opinion. Neither party asserted any exhaustion-related arguments and no applicable statute or rule mandates exhaustion. However, because many decisions in similar cases by district courts within the Sixth Circuit discuss this principal, the Court incorporates its analysis on exhaustion of remedies from a previous case, *Edahi,* 2025 WL 3466682, at \*3, and the Court waives the exhaustion requirement for the same reasons.

> In sum, the plain meaning of "seeking admission" in Section 1225(b)(2)(A)—presently pursuing lawful entry into the United States—is not undermined by any of the other statutory provisions to which the government retreats to find support. Therefore, we find no basis to justify departing from the unambiguous meaning of the text, under which Petitioner is not subject to mandatory detention, because he is not "seeking admission" under Section 1225(b)(2)(A).

*Id.* at 13. In concurrence, Judge Cabranes stated that "[t]he words, properly defined, are clear. That ought to be the end of the matter." *Id.* at *24 (Cabranes, J. concurring).

The Second Circuit noted that divided panels in two other circuits have agreed with the government, *see Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026), while the Seventh Circuit originally reached the same conclusion as the Second Circuit in reviewing a stay motion, after further briefing, the Seventh Circuit recommitted to that holding on the merits. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, --- F.4th --- 2026 WL 1223250, *9-*21 (7th Cir. May 5, 2026). This Court recognizes the circuit split; however, for the reasons set forth in its prior orders and those in the Second and Seventh Circuit's opinions, this Court agrees "with the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position" (over ninety percent of district court judges). *Cunha,* 2026 WL 1146044 (citing American Immigration Council and American Immigration Lawyers Association *Amici* Br. at 5 n.6 (citing Kyle Cheney, *Even Trump's Own Appointees are Ruling Against ICE's Mass Detention Strategy*, POLITICO (Feb. 12, 2026) [https://tinyurl.com/yc7e5sbd])); *Castañon-Nava*, --- F.4th --- 2026 WL 1223250, at *21 (holding that this reading of the statute "gives effect to the statute's every word and takes into full account its context and historical background" including the "government's contemporaneous and long-held understanding of § 1225(b)(2)(A)").

### i. Related Case Law

The United States incorporated brief cites several nonbinding district courts, and one BIA decision, to support their interpretation.[3] However, the Court is not persuaded by these decisions for the reasons previously explained in *Edahi*, 2025 WL 3466682, at \*9–\*13 and *Vicen* 2026 WL 541171, at \*2–\*9, incorporated here by reference.

* * *

For the reasons above and incorporated, Gonzalez, who has been present in the United States for approximately eighteen years, is not "seeking admission" into the United States, a fact acknowledged in his Notice for Appearance by not marking him as an "arriving alien." Section 1226, not Section 1225(b)(2), applies to his detention.

### B. Lawfulness of Current Detention

As stated, Gonzalez is detained under Section 1226. The United States contends that because Gonzalez is properly detained under Section 1225(b)(2), not Section 1226, and he has not been deprived of any due process. [DE 6 at 36]. Otherwise, the United States does not respond to Gonzalez's alleged violation of due process. Because the Court found that Gonzalez's detention is guided by Section 1226, the Court must determine whether the continued detention pursuant to Section 1226 is in violation of his Due Process.

The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected

---

[3] None of the cases cited by the United States are controlling authority within the Sixth Circuit. Further, the BIA is neither binding, nor should be viewed as persuasive authority, on any district court. See *Loper Bright Enter.*, 603 U.S. at 413 ("courts. . . may not defer to an agency interpretation of the law simply because a statute is ambiguous") (emphasis added).

5

by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. The United States does not address the merits of his Due Process claim, but instead focuses solely on the legal argument of Section 1225(b)(2) versus Section 1226 as referenced above.

### 1. Private Interest

It is undisputed Gonzalez has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the detainee's condition of confinement. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025). This is to determine whether the conditions are indistinguishable from criminal incarceration. *Id.* Gonzalez is being detained at Hopkins County Jail. [DE 1 at 11].

Gonzalez previously lived in Madisonville, Kentucky. [*Id.*]. But because of his detention, he is away and separated from his family, friends, and coworkers. [*Id.*]. The detention is thus making it difficult for Gonzalez to participate in his community, work, and care for others. [*Id.*]. As a result, the first *Matthews* factor favors Gonzalez's position.

### 2. Risk of Error

The second factor concerns the risk of the erroneous deprivation of Gonzalez's liberty. A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that "re-detention without any individualized assessment" establishes a "high risk of erroneous

6

deprivation" of a protected liberty interest). As of today, Gonzalez has not had a merits bond hearing, with counsel and evidence. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard). Respondents have not demonstrated that Gonzalez is a flight risk or a danger to the community, nor is it likely they can. Gonzalez has no criminal convictions. [DE 6-1 at 37-38]. Therefore, it would appear to the Court the only material change within the past year, with respect to Gonzalez, is the United States' interpretation of Section 1225 and Section 1226. Thus, because of a high, if not already evident, risk of erroneous deprivation of Gonzalez's liberty interest, the second *Matthews* factor favors Gonzalez.

### 3. United States' Interest

The final *Matthews* factor concerns the United States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao*, 2025 WL 2607924, at *12. However, a "routine bond hearing" before an IJ presently "minimal" burdens to the United States." *Hyppolite v. Noem,* 2025 WL 2829511, at *15 (E.D. N.Y. Oct. 6, 2025). These procedures are also already in place. *Id.* Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025). Because of that, the Court finds that the third *Matthews* factor also favors Gonzalez.

Therefore, the Court finds that all three *Matthews* factors favor Gonzalez. The current detention of Gonzalez is in violation of the Due Process Clause and the INA.

### III.    Remedy

Numerous courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Patel*, 2025 WL 2823607, at *6; *Beltran Barrera*, 2025 WL 2690565, at *7; *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Thuraissigiam*, 591 U.S. at 107 (emphasis in original). This Court is releasing Gonzalez because of the "unlawful detention" by ICE and the United States for the reasons stated above. Gonzalez is not being released because he is detained pursuant to Section 1226. But instead, the Court is ordering his release because of the United States' illegal actions *it undertook* in Gonzalez's detention. *Hyppolite,* 2025 WL 2829511 *16 (holding that the United States cannot "detain [Petitioner] without first conducting a hearing before an IJ" because of the unlawful detention of Petitioner).

As a result of his release stemming from the "unlawful detention" in violation of his due process rights, and *further* pursuant to Section 1226 and its supporting regulations, Petitioner must be provided with a bond hearing on the merits before a neutral IJ before any re-detention. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). The IJ may consider the non-exhaustive list of factors set out in *Matter of Guerra* 24 I. & N. 37, 40 (BIA 2006). Courts across the country have routinely held this procedure proper. *Alonso*, 2025 WL 3083920, at *9; *Lopez-Campos,* F.Supp. 3d at 785-86; *Mboup v. Field Off. Director of N.J.*, 2025 WL 3062791, at *2 (D.N.J. Nov. 3, 2025); *Espinoza*, 2025 WL 2675785, at *11; *Ramirez Clavijo*, 2025 WL 2419263, at *6; *Munoz Materano*, 2025 WL 2630826, at *20.

Gonzalez's procedural due process rights are not violated by the fact he is detained. "Rather, [Petitioner's rights] are violated because [he has been detained without a hearing that

8

accords with due process." *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, *12 (W.D. Tex. Sep. 22, 2025) (citing to *Black v. Decker*, 103 F.4th 133, 149-150 (2d Cir. 2024)). Therefore, "the proper remedy" is the "full process due under [Section 1226] which includes a bond hearing before an [IJ]." *Maldanado,* 2025 WL 2968042, at *9-10; *Morales-Martinez v. Raycraft*, 2025 WL 3124695, at *7 (E.D. Mich. Nov. 7, 2025) (holding that because Petitioner had been detained "without a . . . hearing, he is in federal custody in violation of federal law.")

Because Gonzalez is being detained pursuant to Section 1226, relevant regulations entitle him to a neutral bond hearing. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Therefore, to afford Gonzalez with the "full [due] process" under Section 1226, the United States must provide Gonzalez with a neutral bond hearing before an IJ. *Maldanado,* 2025 WL 2968042, at *9-10.

## VI.    Conclusion

For the reasons stated above, the United States has violated Gonzalez's due process rights. The Court **GRANTS** Gonzalez's Petition for Writ of Habeas Corpus [DE 1] and orders the following:

I.  The United States is directed to release Petitioner Gonzalez immediately because of the unlawful detention in violation of his due process rights.

II.  The United States must provide him with a bond hearing before a neutral IJ pursuant to Section 1226.

III.  The United States must certify compliance with the Court's order by a filing on the docket **by May 12, 2026.**

Rebecca Grady Jennings, District Judge
United States District Court

May 11, 2026

9